BUCHBINDER BROTHERS, a Corporation, Appellant, v. GEORGE E. VALKER, Doing Business as Valker's Minot Greenhouse, Respondent.

(173 N. W. 947.)

**Purchase price — counterclaim — damages.**

> In an action brought to recover the purchase price of certain fixtures delivered to the defendant, where the defendant counterclaimed for damages attributable to the failure of the refrigerator to fulfil the purpose for which it was bought, the evidence is examined and *held* to support the judgment for the defendant on the counterclaim.

Opinion filed June 21, 1919.

Appeal from District Court of Ward County, *K. E. Leighton,* J. Affirmed.

*Bosard & Twiford,* for appellant.

*Palda & Aaker (E. T. Burke,* on oral argument), for respondent.

In case of breach of warranty of the fitness of personality the injured person is allowed a fair compensation for the loss incurred by an effort in good faith to use it for such (warranted) purpose. Comp. Laws 1913, § 7159.

It is not, however, a sufficient reason for disallowing damages claimed that a party can state their amount only approximately. It is enough if, from the approximate estimates of the witnesses, a satisfactory conclusion can be reached. The rule of recovery is compensation. 13 Cyc. 37, and cases cited.

BIRDZELL, J. This is an appeal by the plaintiff from a judgment rendered against it on a counterclaim. The judgment is for $150 and costs. The action was brought to recover a balance alleged to be due to the plaintiff on account of the purchase price of certain fixtures ordered by the defendant. The purchase price was $972, of which amount the defendant had paid $245, leaving a balance claimed to be due of $727. This balance, however, was further altered, under the testimony by debit and credit items involving railroad fare of the

plaintiff's expert and cancelation of the order as to small items; leaving a net balance under the testimony of $717, which the plaintiff claimed. The facts are: In September, 1915, the defendant opened negotiations with the plaintiff, looking toward obtaining a bid from it for certain fixtures to be placed in a retail florist's establishment which the defendant contemplated opening in the near future in Minot. The principal item was an ice box which was to be approximately 16 feet long, 5 feet deep, and 8 feet high. Early in the negotiations it appeared that the defendant was desirous of installing the fixtures at an early date, and that he fixed the date at October 25, 1915, for their delivery in Minot. The fixtures did not arrive until about the middle of November, and, after being set up and installed by the defendant, it appears that the ice box or refrigerator failed to perform the functions for which it had been purchased, the defendant notifying the plaintiff by letter dated November 29th. In this letter it was stated that, after being in place one week, the refrigerator had failed to reduce the temperature below 65 degrees. Attention was also called to some other omissions and defects not material to be considered, except to note that they make up a substantial item. In reply to this letter the plaintiff wrote stating that the refrigerator had been set up and inspected before being shipped, and that the fault lay with the defendant's carpenter in improperly setting it up in defendant's store. The plaintiff also proposed to send a man up from the factory to remedy the defects, the defendant paying his fare. Defendant's correspondence shows that he was very much concerned to have the refrigerator in working order to enable him to better handle the approaching Christmas and holiday trade, so, on receipt of plaintiff's letter, he wired asking that plaintiff's expert be sent at once. Plaintiff delayed sending the expert until about January 5th, following, and when he came he worked one day on the refrigerator. Then, under the presentation that the defects were remedied, he obtained the defendant's signature to a statement as follows:

January 6, 1916.

The signature below signifies the erection and completion of all refrigerator and store fixtures purchased from Buchbinder Bros. and that same are working in satisfactory condition.

(Signed) George E. Valker.

After obtaining the above admission, the expert returned to Chicago. It is undisputed that the testing of a refrigerator of this size to determine its efficiency would require some days, so the admission referred to is worthless. There is ample testimony to the effect that the plaintiff's expert did not succeed in putting the refrigerator in working condition, and that in fact he improved it but little. The defendant later abandoned the retail store in question, and at his own expense moved the refrigerator to another store and rebuilt it.

The only question for consideration in this case is whether or not there is sufficient evidence to support the verdict in defendant's favor upon his counterclaim for damages. The testimony on this subject goes to the extent of establishing that the refrigerator, in the condition it was when received, was practically worthless; that it was remedied but slightly by plaintiff's own expert, who came at defendant's expense; that it had not been finished according to specifications, and that to refinish it would cost something like $60; that the hardware was not according to specifications; that the defendant sustained substantial damage through the loss of flowers put in the refrigerator for hardening, which did not harden on account of the temperature being too high; and that the flowers placed in the worthless refrigerator wilted sooner than they would had they not been placed therein.

The testimony goes to show that the defendant lost a considerable quantity of flowers that were from time to time placed in the refrigerator, and the appellant contends that the verdict cannot be supported except upon the supposition that the jury has charged the plaintiff for the value of all these flowers, thus giving the defendant a recovery based upon his own unreasonable acts enhancing the damages. The argument is made that the defendant could not continue to use a refrigerator that had been demonstrated to be defective and by that method practically sell his output of cut flowers to the plaintiff. This contention is sound if the premise be granted. The premise, however, cannot be granted. It assumes that the refrigerator was worth practically the purchase price, and herein lies the error of the proposition. The refrigerator was bought for use. The special ability of the plaintiff was relied upon, and the testimony shows that, even after the plaintiff's expert had attempted to put it in proper working condition, it was still a failure as a refrigerator. Thus, when the plaintiff left

the job that it was presumably peculiarly qualified to perform, there was left upon the hands of the defendant some material of questionable value for any purpose; and the whole venture, which, to the knowledge of the plaintiff at the time he contracted, was dependent for success upon its prompt delivery of a refrigerator that would do the work it was designed to do, was frustrated for several months, leaving the defendant to pay rent for his building, clerk hire for his help, and to work to a disadvantage in attempting to supply a merchantable product to his customers. In those circumstances, and in the light of the failure of the plaintiff's own expert to remedy the situation, the jury might well have adopted the defendant's view and rendered its verdict on the theory that the so-called refrigerator was practically worthless. In fact, we are of the opinion that it would have been a reasonable view for the jury to take. If they did do so, the verdict is clearly reasonable and well supported.

In this view of the case, the fact that the defendant was later on able to reconstruct the refrigerator and use it to some advantage in another store becomes largely immaterial.

On the record as presented, the verdict is apparently just and the judgment is affirmed.

GRACE, J. I concur in the result.

ROBINSON, J. (dissenting). The plaintiff sues to recover a balance of $727 for goods sold and delivered. On a counterclaim for damages the jury gave the defendant a verdict for $150. Thus the result is to release him from the payment of $727. Hence the verdict is in fact $877, and the plaintiff appeals. The goods were a small refrigerator at $150, a large combination show case and refrigerator, $500, two wall cases, $250, and a counter, $72,—making in all $972. That was the price f. o. b. at Chicago. Defendant paid $245, leaving the balance $727.

The goods were manufactured by the plaintiff at Chicago and shipped to the defendant at Minot, except the small cooler, which was shipped to Williston. Defendant had been in the rosary business at the twin cities, and his purpose in buying the articles was to use them in doing a twin-city rosary business at Minot and at Williston. The

defense is that the goods were not delivered in time and that they were worthless for the purpose for which they were purchased; that the big cooler did not cool the flowers, and, in consequence, they were spoiled to his damage a thousand dollars. There was really no objection to any of the property, excepting the big cooler. The evidence shows that it was shipped in a knocked-down state, and it was not properly put up and did not sufficiently cool the flowers. In fact there was no floral business at Minot to warrant the purchase of such an immense plate-glass show case and cooler. It was much the same as Noah's ark after the flood, when it rested on the top of Mount Ararat; it was out of place. On October 12, 1915, the plaintiff wrote the defendant as follows: "We have your blueprint and letter and will make the refrigerator as follows: 12 feet wide, 5 feet deep, and 8 feet high over all. Front will have four display doors and one window panel in the center, base is covered with 6-inch verde antique marble 6 inches high, drawers in the base. The ice compartment is in the back of the refrigerator, with plate-glass mirrors in the front." Then it is shown that a large part of the front was of plate glass. Now it is well known that glass is a good conductor of heat and cold, and with a temperature of 75 or 80 degrees on one side of the glass, doubtless it was not easy to reduce the other side below 60 or 65 degrees. On the whole, the evidence shows that the combination show case and cooler was made and shipped in accordance with the special order of the florist.

The defendant was slow in making his cash payment, and it seems the plaintiff awaited the payment before commencing to make the cooler. On October 7, 1915, defendant wrote the plaintiff that he was mailing $245, which he did not mail until October 20th, though he expected the goods shipped to arrive November 1st.

The answer is not based on the proper rule of damages, which is given by statute thus: It is: (1) The excess, if any, of the value which the property would have had at the time and place of sale if it had been as warranted, above its actual value; (2) a fair compensation for the loss incurred by an effort in good faith to use the property for the purpose for which it was sold. Comp. Laws, §§ 7158, 7159. Under the statute the answer should have shown the facts thus: The value of the property, if made as per contract, at the time and place

of sale; (2) the real value of the property as put on the cars, f. o. b.; (3) the loss incurred by an effort in good faith to use the property. Of course the evidence should have been limited to the proof of such facts; but, on the contrary, against objections, defendant gave testimony to this effect: The big cooler is worthless, though it has been made over so that it works very good now. The biggest season for chrysanthemums commences the latter part of November and in December. At that time there was produced at the raising plant about 500 chrysanthemums a day. They were worth from $2 to $3 a dozen. I was raising large numbers of carnations and roses, and cut around 1,000 carnations a day and 200 roses. The carnations were worth 5 to 6 cents apiece, and the roses, 8, 10, and 12 cents.

Q. "How much did you lose on the flowers by the defect of the refrigerator?"

A. "Around $2,000."

All the testimony relates to the loss of flowers for want of a proper refrigerator. Day after day it seems defendant kept using the combination show case and refrigerator, and charged the loss to the plaintiff. He charged up the daily loss of flowers for which there was no market. There was no showing of any loss by an attempt in good faith to use the big cut-glass cooler. As a florist it was for defendant to know the right temperature to preserve the flowers and to ascertain the temperature by a thermometer. He had no excuse for attempting to use a cooler that did not cool to a proper temperature. But defendant had to quit the florist business, not for want of a cooler, but because the people of Minot needed bread and butter more than they needed flowers at $2 or $3 a dozen. Had it been possible for defendant to produce flowers and to market them at the prices stated, he would not have quit the business that would soon have made him a millionaire. Neither the answer nor the evidence submitted has any bearing on the correct rule and measure of damages, and the charge of the court does not in any way state the rule or measure of damages. The verdict has no support either in the pleadings or the evidence.

This case was poorly tried. The rule of damage was ignored as it is in the long-delayed majority opinion. The case demands a well-prepared motion for rehearing.

BRONSON, J. I concur in the dissent of Justice ROBINSON. In my opinion, the trial court has clearly erred in the reception of evidence affecting the question of damages, pursuant to the assignments of error.